So when you all are ready we have the United States of America versus Mauricio Medina and Mr. Ailman. It's our position that at the hearing to determine subject matter jurisdiction that the government failed to prove beyond a reasonable doubt that in fact the government had subject matter jurisdiction. Why is this a reasonable doubt standard? Well in the Tinoco case in footnote 25 it talks about the burden and while it doesn't make the decision a decision on the standard in Tinoco it refers to prior precedent back when the jurisdictional issue was before the jury as an element of the offense and what it relies on is the Medina case and it says that the prior precedent is proof beyond a reasonable doubt to prove subject matter jurisdiction. So it's our position that based on that and based on the panel's prior precedent that it's beyond a reasonable doubt for subject matter jurisdiction. And in this particular case all we have is the testimony of Petty Officer Threm and it's interesting that the government chose Petty Officer Threm because Petty Officer Threm wasn't the individual that was in charge of asking the boarding questions. Also Petty Officer Threm doesn't speak Spanish and in fact when he was asked by one of my co-counsels in the case whether he had any command of the Spanish language his answer was no. So in order for the government to go about proving subject matter jurisdiction they rely on Officer Threm's interpretations of what Officer Garcia who was the Spanish speaking officer said in Officer Garcia's interactions with Mr. Bonilla-Aleman and the other crew members. However when you look at the record there's no record as far as what Officer Garcia's fluency is in Spanish other than the fact that he was a Spanish speaking officer. Officer Threm specifically says that he has an idea of what was said based on Officer Garcia's translation but he does not know exactly what was said and that he was just relying on Officer Garcia. There was a lot going on and it wasn't his responsibility to be involved. So we believe based on that that the government failed to prove jurisdiction beyond a reasonable doubt. Also I have to say it does seem like they ask in your case what is the nationality of this ship. Well they do ask but whether it was correctly asked in Spanish we don't know because we never had the Spanish speaking officer testify so it was just based on hearsay and we don't know how good the Spanish speaking officer's translation was. Are you familiar with a lot of Eleventh Circuit cases reversing a conviction on that ground? I'm just asking. What I did look at and I was trying to find some cases based on just hearsay because to me this is based on hearsay and a question of whether this was properly translated so I pointed out to the court in my reply brief the Garces versus U.S. Attorney General case where the Eleventh Circuit found that relying just on four Miami Beach arrest forms which is an admissible hearsay without any corroboration was insufficient to meet the reason to believe standard. So if something is insufficient to meet the reason to believe standard I think that it clearly wouldn't meet the proof beyond a reasonable doubt standard. Also assuming for purposes of this argument that the court finds that the government proved this beyond a reasonable doubt there was also a due process issue with respect to actually testing the subject matter jurisdiction. On April 5th the government files outside of the motion deadline the government files a motion to determine pretrial jurisdiction. On April 6th at 1.34 p.m. in the afternoon the court sets a hearing for the next day so a little over 24 hours later at 2 p.m. on April 7th. And during that hearing I specifically asked the court to continue the hearing to allow me to get Lieutenant Pekowski and Officer Garcia so I can contest the government's subject matter jurisdiction arguments. And I pointed out and it was introduced during the hearing was defense exhibit number one and it was an excerpt of an e-mail from Lieutenant Pekowski which contradicted Petty Officer Threm because Lieutenant Pekowski's e-mail says in fact a claim of nationality was made. And here I was unable to actually have a time to actually prepare a defense on this particular issue for Mr. Bonilla-Aleman because clearly either a claim of nationality had to be made or no claim of nationality had to be made for this vessel and here we had conflicting evidence. And what the government says about that is you lose either way if no claim of nationality was made then it's stateless under B of the statute. And then if there was a claim of nationality it was called into Mexico and Mexico couldn't confirm or deny it so you lose under C of that subsection of the statute. The beautiful thing about due process is I hear if I brought Lieutenant Pekowski in I would have had an opportunity to challenge that statement because the fact that Mexico could not confirm or deny the nationality of the vessel and the reason is if you look at defense exhibit number one it says forms were exchanged with Mexico. Well, we certainly didn't receive any forms and discoveries so I wanted to challenge whether or not Mexico actually gave Lieutenant Pekowski the ability to actually go ahead and assert jurisdiction over the vessel. And here, I mean, at the end of the day we can't just assume Lieutenant Pekowski would have come in and been credible without putting him to the test of cross-examination. That's why we have an adversarial system in the first place and why we have due process. Thank you. Thank you. Thank you. Good afternoon, Your Honors, and please support Mauricio Aldozabal on behalf of Mr. Martinez Medina. And I would like to just address two issues, sentencing issues that were presented for the district court's consideration. The first one is the issue of the minor role and I would argue that the court in this case did not analyze the minor role pursuant to United States v. Quickshank, an 11th Circuit or very recent 11th Circuit court case, which basically indicated that the court, the district court, should analyze each individual within the whole program of the whole case, in other words. In this case, the district court, as is shown in the transcripts of the sentencing, basically, and this case was a little complicated because it involved two different boats. And what happened was Mr. Bonilla, Mr. Martinez Medina, and the captain were on one boat and there was a separate boat with five other individuals. Those five individuals, what happened at trial, one of those individuals was actually, we believe was, well, he was a Colombian individual, he was probably the one that was the guard for the drugs, testified at the first and subsequently at the second trial. Remind me how much time we got. Three minutes, John. Pardon me? Sentence. No, sentence. Oh, sentence. Oh. There's a clock here. I think it's 20 years, Your Honor, I believe. 240 months, that's, yeah, 20 years. 20 years, Your Honor. The second boat where an individual by the name of Solis testified during the trial basically put the whole case on Mr. Bonilla, Mr. Martinez Medina, and the captain who was never brought to the United States for trial. He was actually transported to Mexico so he had some health issues. So at that point, basically, the analysis by the district court should have been between Mr. Medina, Mr. Bonilla, the captain, although he was not there, he was indicted, and the five individuals that subsequently the jury hung on and subsequently went to trial and were found not guilty in the second trial. But the court did not do that. The court basically said that they were all pretty much in the same boat. You know, we, so to speak, we see a lot of appeals of sentences imposed by Judge Moore and consistently, he always says, well, even if my guideline calculations are wrong, I would have imposed the same sentence anyway. Doesn't that protect the sentence from his standpoint under our precedent? Your Honor, he does, he did say that in this case and he actually said it in the other case, in the other argument I have, which is the one for the obstruction, you know, because of the material, which, to be brief, that really had, shouldn't apply to my client. However, there's four levels here and I think four levels is quite a bit to just say, you know, no matter what, I would have given him the same sentence. I think if we went back to resentencing and we were talking about four different levels, I think it would make a difference at that point. Your client's guidelines would have been 151 to 188 without that guideline enhancement? I believe so, Your Honor, yes. It's considerably, a number of years. Once you get to those guideline levels, it starts jacking up exponentially and it's quite a bit of more time. Thank you. Thank you, Your Honor. Any other questions? All right, Mr. Matsken. Good afternoon. I'm going to do my best to tell you what the lighting system, how that's. Thank you very much, Your Honor. I appreciate that very much. We're glad to see you. Thank you. Glad to be here. Good afternoon, Your Honors. Your Honors, may it please the court, Dan Matsken on behalf of the United States with me at counsel table, Rayvon Rodriguez-Shack and Dwayne Williams, who tried the case in district court. And we ask that Your Honors affirm the defendant's convictions and sentences in all respects. This court has long held that a district court's credibility choice between two permissible views of the evidence is the very essence of the clearly erroneous standard. And that's essentially what the jurisdictional issue in this case boils down to. Here, the district court had the benefit of live testimony pretrial from Officer Threm, but then at trial as well from Officer Garcia, whose testimony in all material respects mirrored that of Officer Threm. So the district court, contrary to what my friend on the other side said, did have the benefit of the testimony of the individual who asked the questions, who heard. Well, here there were no responses, actually, so the responses are actually irrelevant. But who asked the questions in Spanish, who knew what was being asked and what was being said at the time. And both of these officers testified to the same thing, that the Coast Guard personnel asked the former occupants of the GO Fast vessel who the master was. Nobody said anything. And then they asked what the nationality of the vessel is, and no one said anything. And on that basis, the magistrate judge, as ratified by the district court, found Officer Threm's testimony to be fully credible, and as a result, found that jurisdiction properly lay in this case. Let me ask you this question. I must confess I do not spend a great deal of time on the high seas, but if my boat had a name on the back, like, you know, Liberia and a flag of Liberia, am I correct that I could not be stopped? That you could not be stopped. That isn't the situation in this case. There were no visible indicia of nationality. I'm asking a hypothetical question. Yeah. I don't want to, I don't know the answer to that question. I don't want to say something that's not true. So is this regime, I know we have a GO-FAST vessel here, and we have a vessel that apparently has no nationality markings. Is that right? That's right. And that is how the Coast Guard, that triggers the Coast Guard's ability to stop this vessel and make it heave to and make them, and permit this vessel to be boarded. There's, I mean, there's also, you know, there's trial testimony on this as well. There's also an internal process that has to be complied with before that happens, but in a nutshell. What do you mean an internal process? Within the Coast Guard that, you know, that there's a chain of command where... I've got to radio back and get permission before I do this? Right, exactly. Right, exactly. And, you know, the Coast Guard personnel on the scene describe the, you know, any, you know, the actions that the vessel is taking, anything evasive, anything unusual, anything suspicious, and they go from there. But I don't want to belabor this because it's really not an EU, an issue that's front and center in this case. But if it has no markings, I mean, if it has markings, this regime markings, if it's a court's identified and flying a flag, this regime just simply doesn't apply. I think that's right. I think that's right. Again, I don't want to misrepresent anything, but that isn't the case and I've never seen a case like that. I hear what you said. Fair enough. Thank you. Right, right. So, you know, this is exactly the kind of credibility finding that district courts make day in, day out, and this court affirms day in, day out. And the one aspect in which this case is different from the usual case, as Judge Martin pointed out, is even under the defendant's own theory of the evidence, or view of the evidence, the government still wins. Because, you know, to the extent that a claim was made... I'm not sure I said that exactly. I'm sorry. I'm paraphrasing, Your Honor. I apologize. Mexico was contacted, according to this exhibit, and neither confirmed nor denied nationality or registry. And so, whether under subsection D-1B or D-1C, Your Honor should affirm the jurisdictional finding in this case. Mr. Matzkin, just to make... You're right about it ten minutes now. Just to make things more interesting for you, when you go back to the office this afternoon. Yes. Is your case stronger than Mr. Colon's case? And if so, why? My case is different than Mr. Colon's case. In the sense that, here, the Coast Guard did ask both for the identity of the master and for a claim of nationality. Sounds better. Were they required to? I rest on my colleague's argument on that point. Turning quickly to the continuance issue, and I do think there's some overlap between that issue and the jurisdictional one. I think that the strength of the primary factor of that test, the extent to which the continuance would benefit the parties seeking it, really is dispositive here, because, as I just argued, even under the defendant's own construction of the evidence, the government still wins. And with respect to the timeline, it actually begins on March 31st, which was fully two weeks before the evidentiary hearing, when the government said openly and explicitly in its response to the defendant's motion to dismiss that no claim was made. It said the same thing in its own motion. And, frankly, to the extent that Officer Pikosky's testimony was so theoretically helpful and important to the defense, the defense could have called them at trial, too. So, really, we have a period starting March 31st, where the government filed its response, going all the way through, really, May 1st, when trial actually started, which was two and a half weeks after... Remind me how this supplemental jurisdictional inquiry was triggered. How did it come about? It came about, initially, via one of the defendants moved to dismiss, and the other defendants joined in that motion. And that motion was filed... Post-trial. I'm sorry? Post-trial. Yeah, it was filed the last week of March. And before a response was filed, the district court set a hearing on that motion. Then, on March 31st... A few minutes later. I'm sorry? A few minutes later. For about two-plus weeks later, April 14th. So, on March 31st, the government filed its response, and then the government affirmatively filed the motion of its own, roughly a week later. And, you know, as the sentencing issues in this case appear to be foreclosed, I'm happy to take any questions. But if Your Honors have none, I will rest on our briefs and ask that Your Honors affirm in all respects. Thank you for your presentation. Thank you, Your Honors. Good afternoon, once again. First, I'd like to correct a couple of facts. Number one, these motions were filed pre-trial. And the government's motion for pre-trial determination of jurisdiction was not filed on March 31st. It was filed on April 5th. And the hearing was not held on April 14th. It was held on April 7th. And the notice of that hearing, putting me on notice that I better be ready to contest the government's subject matter jurisdiction, that notice was issued on April 6th. As Your Honors said, minutes before the hearing. And I just don't see how the government can, well, I see how the government's saying we win no matter what. Because they always say that. But in any event, I don't see how the court can affirm that under due process. In any event... Do you have reason to believe that there was a written exchange between our government and the, I forget, Mexican and Colombian government about the registration of the vessel? I do. In defense . . . Have you seen, can you represent that you've seen that exchange? Have you seen those documents? I haven't seen the documents. And that's one of the reasons why Lieutenant Pekowski should have been, you know, that I should have been given a continuance to subpoena Lieutenant Pekowski or the government should have been ordered to produce him. Because what it says in defense exhibit number one is District 11, which is the Coast Guard District, exchanged forms with government of MX, Mexico, and Mexico could not confirm nor deny Mexican nationality. So none of those forms were turned over. So if I subpoenaed in Lieutenant Pekowski, Lieutenant Pekowski would have directly contradicted Officer Thuram that there was no claim of jurisdiction or of nationality for the vessel, number one, which would have affected the court's credibility determinations. And number two, I would have been able to impeach Lieutenant Pekowski on whether or not Mexico ever was called by the Coast Guard after a claim of nationality was made. Because under that scenario, the defense prevails. And the whole problem with this is I was never given an opportunity to defend Mr. Bonilla-Aleman and raise that point with the district court because I wasn't given time to actually bring in Lieutenant Pekowski to say, where are these forms? Did you really ever contact Mexico and challenge his credibility? So the magistrate could have made a credibility determination. And that's what due process is all about, a meaningful opportunity to be heard. And I wasn't given a meaningful opportunity to be heard. And I completely differ with the government that they went either way. I think I could have had a shot in cross-examination to undermine Lieutenant Pekowski's credibility and call into question whether or not there was jurisdiction. Thank you. Your Honor, same situation. Since the government did not address any of the sentencing issues, I really don't have any rebuttal. Thank you. Thank you. And we appreciate the presentation on both sides. Thank you. And when you all are ready, we'll hear the case.